UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>SHATEEK ANDREWS,<br><br>Defendant. | 04 Cr. 1232 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Mr. Andrews' motion pursuant to 18 U.S.C. § 3582(c)(1)(A) for compassionate release based on his medical condition, (dkt. no. 116), and the Government's opposition, (dkt. no. 125). For the reasons set out below, the motion is denied.

I.   **Background**

   a.   **The Defendant's Conviction and Sentencing**

Between September 2001 and November 2005, the Defendant committed five robberies of individuals in various commercial establishments in the Bronx. On September 15, 2001, he committed a robbery at Copos Blancos, a money transfer agency and cellphone store located on East 167th Street. (Trial Transcript ("Tr."), dated Jan. 5, 2006 [dkt. no. 38] 84:22-85:6.) He entered the store and demanded money from an employee. (Id. 32:3-6.) After she gave him the money from the cash register, he held what she believed to be a firearm to her forehead, saying, "don't be a hero,

give me the money."₁  (Id. 34:4-14.)  The employee then opened a safe, and the Defendant removed cash from the safe and fled the store.  (Id. 34:17-35:16.)  On January 17, 2002, the Defendant robbed a grocery store located on the same block as the prior robbery.  A videotape of the incident shows that the Defendant entered the store, feigned possession of a gun, pushed the employee at the cash register, and attempted to take money from the cash register.  (GX 35; Tr. 211:24-215:13.)

On October 17, 2004, the Defendant robbed a locksmith located on East 170th Street in the Bronx.  (Tr. 256:21-261:18.)  He entered the store, feigned that he had a gun in his jacket pocket, and demanded the money from the cash register.  (Id. 259:18-260:22.)  On October 19, 2004, the Defendant committed a robbery at a laundromat near 168th Street and Clay Avenue in the Bronx.  (Id. 284:17-285:2; 317:1-11.)  He again entered the business, confronted an employee, demanded the money in the cash register, and fled the premises.  (Id. 288:23-291:16.)  Finally, on November 5, 2005, the Defendant committed a robbery at a travel store on East 165th Street in the Bronx.  He entered the store on

---

₁ The employee testified that the Defendant used a firearm in this robbery, but the jury returned a verdict of not guilty on Count Two, which charged him with the use of a firearm in connection with this robbery.

2

a pretext after it was closed, grabbed the store owner's wallet, and fled. (Id. 356:19-358:20, 389:18-392:7.)

On January 17, 2006, a jury returned a guilty verdict against the Defendant on five counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951. The United States Probation Office then prepared a presentence report that calculated the Defendant's Sentencing Guidelines range to be 210 to 262 months' imprisonment. (Presentence Investigation Report ("PSR"), dated June 28, 2006 [filed under seal] ¶ 168.) In its sentencing submission, the Government argued that the Court should impose an upward departure under U.S.S.G. § 4A1.3(a)(4)(B) because the Defendant's Criminal History Category underrepresented the seriousness of his criminal history. (Dkt. no. 45 at 5-8.) The Government noted that the Defendant's many prior convictions included multiple assaults of police officers, an assault of a prison guard, and two violent assaults of women, including an incident in which the Defendant slashed a woman and caused multiple lacerations to her face. (Id.) He also had three prior robbery convictions in addition to the five robberies for which he was convicted in this case, and he also had petit larceny convictions for an incident in which he committed a robbery by threatening a victim with a box cutter and for an incident in which he entered into a premises and stole property while wielding a meat cleaver. (Id. at 6-7.)

3

On August 24, 2006, the Court sentenced the Defendant. The Court agreed with the Government that a two-level upward departure was warranted because the Sentencing Guidelines range failed to account for the seriousness of the Defendant's criminal history. This upward departure resulted in a Sentencing Guidelines range of 262 to 327 months. The Court noted that the Defendant had "shown [himself] to be an individual who consistently uses violence, threats of violence and intimidation to terrorize innocent members of his community." (Sentencing Transcript ("Sent. Tr."), dated Aug. 24, 2006 [filed under seal] 24:14-17.) The Court also found that "there is no reason to think that the extremely lengthy and troublesome history of convictions that is reflected in the presentence report will ever end," (id. 37:10-12), that the Defendant "has no respect for the law whatsoever," (id. 38:2), and that "there is a crying need in this case to protect the public from further crimes of this [D]efendant," (id. 38:11-13.) The Court ultimately imposed a sentence of 300 months' imprisonment, of which the Defendant has served approximately 70 percent. The Bureau of Prisons ("BOP") projects the Defendant's release date to be November 23, 2027.

b.  **The Defendant's Motion for Compassionate Release**

On March 8, 2023, the Defendant filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

4

The Defendant's pro se motion contends that he is "an inval[id], crippled, with mental illness, on account of unwarranted excessive force [at] USP McCreary KY." (Dkt. no. 116 at 1.) He further argues that, as a result of the purported excessive force incident, he is "wheelchair bound, [and] having suffered a [stroke] that paral[y]zed [D]efendant, including mental [deficiencies]." (Id.)

On April 5, 2023, the Court ordered the Government to file a response to the Defendant's motion and to attach, under seal, any "relevant physical and mental health records." (Dkt. no. 120.) The Government produced the Defendant's medical records from BOP, as well as certain disciplinary and administrative records, including records relating to an incident at USP McCreary in 2020 and records relating to the Defendant's current medical condition. The Government filed under seal its response to Defendant's motion and the appended medical records, (dkt. no. 125), and sent a copy to the Defendant.

## II. Applicable Law

### a. Compassionate Release Under 3582(c)

Under U.S.C. § 3582, as amended by the First Step Act, "[t]he court may not modify a term of imprisonment" once it has been imposed, except that":

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

The Sentencing Commission, prior to the First Step Act's amendment of Section 3582, had outlined several circumstances that constitute "extraordinary and compelling reasons" supporting a sentence reduction, including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B)(i). The Court of Appeals has held that this policy statement is not binding on district courts, see United States v. Brooker, 976 F.3d 228, 234-36 (2d Cir. 2020), but courts may "look[] to § 1B1.13 for guidance in the exercise of [their] discretion" when considering a motion for compassionate release. United States v. Rodriguez, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020).

6

There are three prerequisites for granting a defendant's motion for compassionate release. First, the defendant must have exhausted his administrative rights. See 18 U.S.C. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant" a reduction of sentence. Id. § 3582(c)(1)(A)(i). This determination can be informed by the standards set forth in U.S.S.G. § 1B1.13, but the court is also free to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." Brooker, 976 F.3d at 237.

And third, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). Even if a defendant demonstrates that extraordinary and compelling reasons for compassionate release exist because he suffers from a qualifying medical condition, "[a] court is not required to reduce a sentence on compassionate release grounds . . . ." United States v. Israel, No. 05 Cr 1039 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019) ("The First Step Act was drafted using the word 'may,' not 'must.' In the end, whether to reduce a sentence is a matter that rests in the discretion of the sentencing court."); see also United States v. Butler, No. 18 Cr. 834 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release to a defendant who had serious medical

7

conditions in light of the Section 3553(a) factors and danger defendant posed to community).

### III. Discussion

The Government does not contest that the Defendant has exhausted his administrative remedies. (Dkt. no. 125 at 4.)

#### a. The Defendant Has Not Demonstrated Extraordinary and Compelling Reasons for Release

As set forth in the moving papers, the opposition, and the Defendant's medical records (filed under seal), the Defendant is 56 years old, is wheelchair bound, and suffered from a stroke that has caused partial paralysis. Specifically, the Defendant's diabetes resulted in pain and infections in his foot which led to a partial foot amputation. (Id. at 4-5.) Contrary to the Defendant's argument that an incident of "excessive force" led to his physical maladies, (dkt. no. 116 at 1), BOP records indicate that the Defendant became aggressive with a nurse practitioner attempting to perform a blood pressure check on June 11, 2020, and he was placed in restraints but "continued to resist staff," (dkt. no. 125, Exs. B-C). Indeed, the Defendant's medical records state that "his toes were amputated due to diabetes." (Id., Ex. E.) While the Medical Summary of Defendant prepared on August 11, 2021 indicates that his medical conditions "qualify from a medical perspective for a consideration of a reduction in sentence," (id., Ex. F at 7), the Court finds that the Defendant has not established

8

"extraordinary and compelling conditions" warranting release. See 18 U.S.C. § 3582(c)(1)(A)(i).

As noted above, the Sentencing Commission has concluded that for a health concern to amount to an extraordinary and compelling condition warranting release, the defendant must show that he is presently "suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B)(i).  Here, while the Defendant certainly has serious medical conditions, and while BOP itself has considered whether he is a candidate for early release, his medical records on the whole demonstrate that he is receiving adequate care from BOP. To the extent that there have been issues with his medical care, they appear to stem from his aggressive behavior towards medical staff and his refusal to comply with prescribed treatments and tests, not from the fact that he is in a correctional facility.

In similar circumstances, where defendants have had serious medical conditions but are receiving appropriate care within a BOP facility, this Court and others in this district have held that such defendants have not carried their burden of proving extraordinary and compelling reasons for release. See United

9

States v. Borelli, No. 84 Cr. 63 (LAP), 2021 WL 2228075, at *2-4 (S.D.N.Y. June 2, 2021) (concluding no extraordinary and compelling reasons where a 72-year-old defendant suffered from diabetes, cataracts, and heart disease but was able to manage his conditions through BOP medical care); United States v. Rodriguez, No. 88 Cr. 642 (LAP), 2022 WL 2533468, at *3 (S.D.N.Y. July 7, 2022) (concluding no extraordinary and compelling reasons where a defendant experienced memory lapses and language issues but remained independent in his daily activities); United States v. Castillo, No. 03 Cr. 979 (KMW), 2023 WL 2262881, at *3 (S.D.N.Y. Feb. 28, 2023) (concluding no extraordinary and compelling reasons where a 65-year-old defendant had multiple serious medical issues, including an enlarged prostate, heart disease, and eye problems, but conditions were being managed by BOP).

Because the Defendant is receiving excellent medical care and has not demonstrated a diminished ability to provide self-care within the facility, the Court finds that he has not demonstrated extraordinary and compelling circumstances warranting release.

### b.   The Section 3553(a) Factors Militate Against Release

Even if the Defendant had established extraordinary and compelling conditions warranting release, the Section 3553(a) factors militate against the Court's exercising its discretion to release him.  First, the nature and circumstances of the

10

Defendant's crimes counsel against release. As noted above, he committed five robberies of small commercial establishments during which he feigned possession of a firearm and placed his victims in fear of their lives. These robberies were but the culmination of the Defendant's long history of serious and violent criminal conduct, including violent assaults on women, police officers, and a prison guard, together with multiple robberies. Worse yet, the Defendant has never expressed any remorse or taken any responsibility for his conduct. But for the Defendant's medical conditions, there has been no change in circumstances since the Defendant's sentencing.

Indeed, the Defendant has continued his disrespect for the law while incarcerated. In just the past five years, he was disciplined for threatening bodily harm on March 8, 2023, which appears to be the same incident referenced in the medical records cited above. (Dkt. no. 125, Ex. G at 1.) He also has a 2022 discipline for slapping another inmate, multiple disciplinary incidents in 2021 and 2022, a 2019 discipline for spitting on another inmate, and a 2018 discipline for possession of a concealed razor blade. (Id. at 1-3.) In sum, the Defendant's actions while incarcerated indicate that he is likely to continue his criminal behavior if released. Accordingly, the Court finds that the Section 3553(a) factors militate against release.

11

## IV. Conclusion

For the reasons set out above, Mr. Andrews' motion pursuant to 18 U.S.C. § 3582(c)(1)(A), (dkt. no. 116), is denied. The Clerk of the Court shall mail a copy of this order to Mr. Andrews.

**SO ORDERED.**

Dated:  New York, New York
        June 11, 2024

_____
LORETTA A. PRESKA
Senior United States District Judge